# IN THE COURT OF APPEALS OF IOWA

No. 23-0044
Filed August 30, 2023

**JEREMY LEE MUNTZ,**
        Petitioner-Appellee,

**vs.**

**TRINA MARIE SAYRE,**
        Respondent-Appellant.
_____


        Appeal from the Iowa District Court for Van Buren County, John M. Wright,

Judge.


        A mother appeals from the district court's order modifying physical care of

her two children.  **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

**WITH DIRECTIONS.**



        Diana Miller and Katelyn Kurt of Whitfield & Eddy, P.L.C., Des Moines, for

appellant.

        Cynthia D. Hucks of Box and Box Attorneys at Law, Ottumwa, for appellee.


        Considered by Schumacher, P.J., and Chicchelly and Buller, JJ.

**BULLER, Judge.**

Trina Sayre appeals the district court's modification order granting physical care of her twin children to the children's father, Jeremy Muntz, and granting her visitation for three weekends each month, with no set summer schedule. She argues the court erred in finding Jeremy could provide superior care to the children and in failing to set a specific summer visitation schedule. Jeremy requests appellate attorney fees. We affirm the physical-care determination, reverse the district court's order refusing to set a summer-parenting-time schedule, remand with directions to set such a schedule, and deny the request for appellate attorney fees.

## I.     Background Facts & Proceedings

Jeremy and Trina have never been married to each other. Their relationship produced the two children at issue here, twin boys born in 2018. The parties both lived in Van Buren County when the children were born.

At the time of the modification trial, Jeremy lived in Ankeny with his paramour. Jeremy and his paramour have one child together—born after the two children at issue here—with a second child on the way. He works full-time as an aircraft mechanic with flexible hours that allow him to adjust his schedule for the children. Trina continues to live in Van Buren County with her two other children— ages fifteen and twenty—from a prior relationship. Her primary employment is with the local school district as a paraeducator. She also works occasionally as a bartender and housekeeper. The parties are approximately two hours from each other in their current homes.

As soon as the twins were born, Jeremy believed he and Trina should share physical care of the children on an equal basis. Trina disagreed, and Jeremy filed a petition to determine custody and care. In October 2019, the district court entered its decree granting the parties joint legal custody and joint physical care on a 2-2-5-5 schedule unless the parties agreed on an alternate care schedule.

Despite an avowed intention to co-parent, the parties disputed or feuded over numerous decisions related to the children. Both parents failed to discuss common parenting issues with each other, including extracurriculars and doctor appointments. The parties could not agree on whether the children should receive flu shots. More concerningly, Trina allowed the children to be around a person who had reportedly engaged in inappropriate behavior with other male children, and she testified she has no concerns about her children being around this person.

The parties' interactions with each other are also dysfunctional. Jeremy is, in the words of the district court, "controlling": he followed Trina and photographed her, called the sheriff's office on her, and snooped on her by calling an exterminator and asking for details about her home. For her part, Trina has been inflexible with parenting time and has a history of abusing alcohol. The parties have filed multiple contempt actions against each other since the initial petition.

In February 2021, Trina filed the petition to modify physical care at issue in this appeal. Her petition alleged Jeremy could not co-parent with her.

On May 25, 2022, Jeremy accepted an offer to work as an aircraft mechanic in Ankeny. He testified he emailed his attorney a few days later to inform Trina of his impending move from Van Buren County to Ankeny, but apparently due to his

attorney's illness, his attorney did not notify Trina of the move until June 28. Jeremy moved to Ankeny on August 6.

In July 2022, on Trina's motion, the district court appointed a Child and Family Reporter (CFR) to make recommendations on the best physical-care arrangement for the children. The CFR reported both parents were capable of raising the children, but she recommended placing physical care with Jeremy "due to his flexible employment, ability to provide a two-parent household, offerings of a larger community and the strong educational opportunities in Ankeny."

After trial in the fall of 2022, the district court found a substantial change in circumstances and placed physical care with Jeremy. The court also granted visitation with Trina on three weekends each month "[a]t a minimum." Trina filed a motion to enlarge or amend, asking in part for a set summer visitation schedule. The district court denied the motion and refused to set a summer schedule, noting it "provided for a MINIMUM schedule of visitation" and expected the parties to "agree on further opportunities for the children to spend time with their mother." Trina appeals.

## II. Standard of Review

We review custody and care decisions de novo. *Thorpe v. Hostetler*, 949 N.W.2d 1, 4 (Iowa Ct. App. 2020). "[W]e examine the entire record and decide anew the issues properly presented." *In re Marriage of Rhinehart*, 704 N.W.2d 677, 680. While we are not bound by the fact-findings of the district court, we do give them weight—especially credibility determinations. *Thorpe*, 949 N.W.2d at 5.

### III. Discussion

The parties agree that a substantial change in circumstances has occurred since entry of the initial decree and shared physical care is no longer appropriate. *See In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983) ("To change a custodial provision of a dissolution decree, the applying party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change."). Trina's two arguments on appeal are that the district court erred in placing physical care with Jeremy and in not detailing a specific summer visitation schedule. Jeremy also argues Trina should pay his appellate attorney fees. We address each claim in turn.

#### A. Physical Care

Trina contends that she should have received physical care of the children, rather than Jeremy. Our foremost consideration in physical-care decisions is the best interests of the child. Iowa R. App. P. 6.904(3)(o); *In re Marriage of Brainard*, 523 N.W.2d 611, 614 (Iowa Ct. App. 1994). In determining the best interests of the child and which parent should receive physical care, we consider several factors, including those set out in Iowa Code section 598.41(3) (2019) and *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974). The overall objective in determining physical care is to promote the child's physical health, mental health, and social maturity. *In re Marriage of Hansen*, 733 N.W.2d 683, 700 (Iowa 2007). "The critical issue is which parent will do better in raising the child." *In re Marriage of Burkle*, 525 N.W.2d 439, 441 (Iowa Ct. App. 1994).

On our de novo review, Trina asks us to reweigh several factors and place physical care with her. She specifically argues the district court erroneously considered two improper factors.

First, she argues the district court erred in considering Jeremy's higher income when it commented he "earns a good income." We do not read the court's comment as favoring Jeremy for earning more money than Trina. We believe the court was observing Jeremy has adequate resources to provide for his family, and we can say the same for Trina. Because both parties are able to provide for the children, we do not believe the question of income favors either party. *See In re Marriage of Gravatt*, 371 N.W.2d 836, 840 (Iowa Ct. App. 1985) ("Poverty alone has never been accepted as a sound basis for declining to give either parent the custody and control of the issue of the marriage, providing they are otherwise equipped and the child's welfare would not be jeopardized.").

Second, Trina argues the district court erroneously favored suburban Ankeny over rural Van Buren County as a superior community to raise the children. We agree the general characteristics of each community is not a proper factor in determining physical care. *See In re Marriage of Engler*, 503 N.W.2d 623 (Iowa Ct. App. 1993) ("We do not award custody by determining whether a rural or urban Iowa upbringing is more advantageous to a child."). Both Ankeny and Van Buren County offer unique opportunities for the children, and we do not believe these communities favor placing physical care with either parent.

Disregarding both their incomes and their communities, we turn our de novo review to "which parent will do better in raising the child[ren]." *Burkle*, 525 N.W.2d at 441. Like the district court and the CFR, we believe the relevant considerations

slightly favor placing physical care with Jeremy. We note first that both parties love their children, but we have significant concerns with their parenting: both parents have worked to undermine the other, and their inability to co-parent has done the children no favors. While both parties can provide a suitable home for the children, we agree with the district court that Jeremy's dual-parent household and flexible employment slightly tilt the scales in favor of placement with him. Trina rightly points out Jeremy is not married to his paramour, but their four-year relationship and two shared children convinced the district court and us that they are likely to remain together for the foreseeable future. We affirm the grant of physical care.

### B. Visitation Schedule

Trina's second argument is that the district court erred when it refused to set a specific summer visitation schedule. We agree.

In crafting a custody order, the court "shall order the custody award . . . which will assure the child the opportunity for maximum continuing physical and emotional contact with both parents." Iowa Code § 598.41(1)(a). When faced with a petition to modify following relocation, the "court shall modify the custody order to, at a minimum, preserve, as nearly as possible, the existing relationship between the minor child and the nonrelocating parent." *Id.* § 598.21D. Despite these statutory duties, the district court explicitly refused to set a summer schedule, directing the parties to the generic parenting-time provision, and announcing: "The court provided for a MINIMUM schedule of visitation. The parties are not locked into this. They certainly can, and are expected to, agree on further opportunities for the children to spend time with their mother. The court will not fashion a more detailed schedule."

These parents can't agree on flu shots; they certainly won't be able to agree on a summer-parenting-time schedule that furthers the best interests of the children. We think the parties' request for a specific summer schedule was reasonable in light of the unique issues frequently posed by young children's summer schedules: no school, abundant activities, family vacations, etc. The district court acted unreasonably in denying the request given the dynamics of the parents in this case, and we reverse that portion of the ruling.

On remand, the district court shall allow the parties to propose specific summer-parenting-time schedules. The court shall consider those proposals and then enter an order providing for a specific summer-parenting-time schedule, consistent with the factors outlined in the Iowa Code and case law. Although the district court is not bound by the CFR's recommendation, we note her report favored "6–8 weeks in the summer" for Trina. In any event, we direct that the schedule ordered by the district court must afford Trina significant summer parenting time. *See* Iowa Code § 598.21D.

### C. Appellate Attorney Fees

Last, Jeremy requests appellate attorney fees "based on the superfluous nature of [Trina's] appeal." An award of appellate attorney fees is within our discretion, and we exercise that discretion based on "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013) (internal quotations and citations omitted). Here, Jeremy has not shown any compelling need in seeking the award and has not shown that Trina has any significant ability to pay. Both parties could plausibly claim victory on aspects of

this appeal.  We decline to award appellate attorney fees.  Costs are assessed 40% to Jeremy and 60% to Trina.

### IV.　Disposition

We affirm the district court's award of physical care to Jeremy.  We reverse the district court's ruling denying the request for a summer-parenting-time schedule, and we remand with directions to order a specific summer schedule consistent with this opinion.  We decline to award appellate attorney fees, and we assess costs 40% to Jeremy and 60% to Trina.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.**